OPINION OF THE COURT
Meyer, J.
A defendant’s attorney who learns of an alibi witness at arraignment does not act unethically in not then revealing the existence of that witness to the prosecution-. A trial in which the Trial Judge in his questioning of the attorney who represented defendant at arraignment, called as a witness to establish that the testimony of the alibi witness at trial is the same information he received at arraignment, implies that the withholding of the existence of the alibi witness was unethical and thus casts doubt upon the credibility of the defendant’s attorney is not a fair trial, nor under the circumstances of this case was the error harmless. The order of the Appellate Division should, therefore, be reversed and a new trial ordered.
On November 26,1974, at about 8 p.m., a grocery store in Jamaica was robbed. The person in charge of the store at the time was Derrick Brooks, then 15 years of age. Brooks testified that his cousin, Ricky Pridgen, was with him in the store at the time. About a week later, while taking a note to his mother at the Jamaica office of the Department of Social Services, Brooks saw defendant, whom he testified he recognized immediately from the coat he wore and his face and hat. The police were called and defendant was arrested. On December 2, 1974, defendant was arraigned at night court. During arraignment he was represented by Howard Raab, a Legal Aid attorney. Present also was defendant’s common-law wife, the mother of his two chil *132 dren. On January 3, 1975, more than the 20 days after arraignment allowed by CPL 250.20 for doing so, the People served a demand for a “notice of alibi.”
On May 27, 1975, after opening statements and just prior to the beginning of the People’s case, defendant’s then Legal Aid attorney, Charles Lavine, served a notice of alibi, arguing that he was not, however, required to do so because of the untimeliness of the People’s demand. Over objection from the People, the Trial Judge permitted the notice to be filed but stated that he would recess the trial to permit the People to investigate should they so request. The People’s case consisted of the testimony of Brooks, Pridgen, the detective who responded concerning the robbery on November 26 and the officer who arrested defendant on December 2. Cross-examination of Brooks revealed that he had signed a notarized statement that his identification of defendant was mistaken, of Pridgen that he could not recall the description of the robber (though he identified defendant in court), and of the detective that he understood Brooks to have been alone at the time of the robbery. On redirect, Brooks testified that he had signed the written statement under physical threat from defendant’s brother.
The defense presented defendant’s brother who testified that the statement though requested by him was voluntarily written by Brooks and then notarized, and defendant’s common-law wife who testified that she and defendant had left Jamaica at 4:30 p.m. on November 26 and returned to her mother’s apartment in The Bronx, where she testified defendant remained at least until she went to sleep at 10 p.m. As might be expected she was subjected to searching, cross-examination concerning her relationship with defendant, life-style and motive to protect defendant. To rehabilitate the alibi witness defendant then called as a witness Howard Raab, who testified from notes indorsed on the file at the arraignment that defendant’s wife had told him at that time that defendant was with her in The Bronx at the time of the robbery.
Although the prosecutor limited his cross-examination to the one question whether Raab himself made the particular notation (to which there was an affirmative response), *133 the Trial Judge then inquired whether Raab had told the District Attorney he had an alibi witness “rather than put the prosecution and everybody through the burden of bringing this matter to court” and whether he did not “think it was your duty as a member of the Bar” to do so. To Raab’s response that he regarded the information as confidential, the Judge responded “You are an officer of the Court. You do owe a duty to the Court” and “You took no steps to apprise the District Attorney or anyone else. You let this matter proceed through the Grand Jury into the Trial Part.” He then advised the jury that though the “rules” require notice of an alibi witness, defendant had not served such notice until that morning, and that he was, therefore, recessing the trial to give the People an opportunity to investigate.
When the trial resumed two days later, the People recalled Raab who admitted that at times he checked out things told him as an attorney and sometimes found them false, but testified that he had not checked the alibi witness’ story because he knew he was not going to represent defendant beyond the arraignment. Summations followed immediately thereafter. Defendant’s trial attorney was permitted over objection to inform the jury that CPL 250.20 required a demand by the People within 20 days, that the demand was not received within 20 days and that he was, therefore, under no obligation to inform the District Attorney of anything. The prosecutor in summation responded that while the notice was four days late it was received by defendant’s attorney in January and not responded to until May.
The Trial Judge in his charge commented upon the attorneys’ summations regarding alibi notice and told the jury that “while Mr. Lavine [defendant’s trial attorney] raises the issue that under the law the notice served upon him was not served sufficiently, pay no attention to that” and that “it has nothing to do with the issues before you whether the statement was served or filed, has nothing to do absolutely, nor should you consider that in any way.” He then denied a request to charge CPL 250.20 and denied all requests to charge except as charged, including Lavine’s *134 specific written request that the court charge that he had acted ethically concerning the notice requirement.
What the Trial Judge overlooked in denying the latter requests was the clear implication of his examination of Raab that Raab’s rehabilitating testimony was incredible, because an ethical attorney would immediately have revealed to the prosecutor the existence of an alibi witness. That there is no such rule of law is established by People v Dawson (50 NY2d 311) and People v Conyers (52 NY2d 454). Dawson recognized that exculpatory information may not be volunteered to the District Attorney because of a belief that “efforts to exonerate the suspect would be futile” or “because they were explicitly instructed to do so [not volunteer] by the defendant’s attorney” (50 NY2d, at p 322), commented upon “the low probative worth” of prior silence (id.), and required that the Trial Judge advise the jury that such testimony could be considered only on credibility (id., at p 323) and that a Bench conference be had “to ascertain whether the witness refrained from speaking under the advice of defense counsel” (id.). Conyers acknowledged that prior silence concerning exculpatory information “may be attributable to a variety of innocent circumstances that are completely unrelated to the truth or falsity of” testimony (52 NY2d, at p 458), that jurors, however, are not “necessarily sensitive to the wide variety of alternative explanations” (id., at p 459) and that the hazard is greatest for a defendant that an unjustified inference will be drawn and, therefore, the “utmost caution * * * [must be] exercised in order to ensure that the defendant is not deprived of a fair trial” (id., at p 459, n 2).
That the witness in question, Raab, was defendant’s attorney rather than the defendant himself is beside the point. CPL 250.20 requires that the People serve a demand for notice concerning alibi witnesses and Dawson requires a conference out of the presence of the jury to be held to ascertain whether a witness other than the defense attorney was instructed by the defense attorney not to come forward with exculpatory testimony. It follows that (1) it cannot be unethical for the defense attorney himself to withhold such information, and (2) in any event questioning or colloquy between the Trial Judge and the defense *135 attorney concerning his failure to come forward should take place out of the presence of the jurors to avoid the possibility that they will be led to infer that the Trial Judge believes that the attorney’s testimony is incredible. In the instant case the colloquy following Raab’s testimony suggests that the Trial Judge was thinking more of the unnecessary burden on the courts and on the defendant who remained in jail pending trial than he was of the effect of what he was saying on the jury. His somewhat unusual step of allowing defendant’s attorney to argue the law concerning CPL 250.20 to the jury may, nevertheless, have straightened the matter out had he not then instructed them to ignore that part of the summation and denied defendant’s oral and written requests to charge with respect to that section. Though defendant is not entitled to a perfect trial, he is entitled to a fair trial, and a trial in which the Trial Judge interjects through questions and comments serious doubt concerning the veracity of a witness does not constitute a fair trial.
Nor can the error be deemed harmless. Brooks’ notarized statement and the detective’s notation that he was alone put both his and Pridgen’s testimony in serious doubt, and Pridgen’s inability to describe the robber raised substantive question concerning his identification. When to those flaws in the People’s case are added the alibi testimony of the wife and Raab’s testimony, establishing if accepted, that the alibi was not a recent fabrication, the evidence of guilt was far from overwhelming.
Accordingly, there should be a reversal and a new trial.
Chief Judge Cooke and Judges Jones, Wachtler and Fuchsberg concur with Judge Meyer; Judge Jasen concurs in result only; Judge Gabrielli taking no part.
Order reversed and a new trial ordered.